UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DIANE GORZYNSKI,

                        Plaintiff,

      v.

JETBLUE AIRWAYS CORPORATION,

                        Defendant.

---

**DECISION AND ORDER**

03-CV-00774  EAW

Plaintiff Diane Gorzynski has filed a motion requesting that the Court determine that the January 21, 2014, text order of the Honorable Richard J. Arcara, United States District Judge, reassigning this matter to the Court's Rochester Division is void *ab initio*. (Dkt. 113). Alternatively, Plaintiff requests that the Court transfer this matter back to the Court's Buffalo Division. (*Id.*). Defendant opposes Plaintiff's motion. (Dkt. 123). For the reasons set forth below, Plaintiff's motion is denied.

## BACKGROUND

Plaintiff commenced this lawsuit on October 15, 2003, alleging that Defendant JetBlue Airways Corporation, her former employer, discriminated against her on the basis of her age and gender and retaliated against her for engaging in protected activity. (Dkt. 1). Plaintiff was employed by Defendant at the Buffalo-Niagara International Airport and her action was assigned to this Court's Buffalo Division.

The procedural history of this case (now in its eleventh year) is extensive, involving a complete grant of summary judgment in Defendant's favor (Dkt. 36), a subsequent reversal and remand by the United States Court of Appeals for the Second

Circuit (Dkt. 41), and an original trial date set for February 1, 2013.  (Dkt. 76).  That original trial date was cancelled due to the demands of Judge Arcara's criminal calendar (Dkt. 99), and no adjourned trial date was set.

On September 13, 2013, the parties appeared for a status conference before Judge Arcara, wherein he informed the parties of his intention to transfer this matter to a District Judge in the Rochester Division. (Dkt. 103).  On September 30, 2013, Plaintiff's counsel electronically filed a letter brief objecting to the proposed transfer on the basis that Plaintiff's alleged choice of forum and the convenience of witnesses supported holding the trial of this action in Buffalo. (Dkt. 104).  On October 10, 2013, Defendant's counsel filed an opposing letter brief arguing that the parties' and the Court's interests in expediting the trial in this matter outweighed the minimal inconvenience of traveling to Rochester rather than Buffalo.  (Dkt. 105).  Plaintiff's counsel filed a reply letter brief on October 18, 2013.  (Dkt. 106).  Plaintiff's reply acknowledged that the Court had invited the parties to provide comment and discussion regarding the proposed transfer at the status conference held on September 13, 2013, and further argued that inconvenience to lay witnesses weighed against the proposed transfer.  (*Id.*).

Judge Arcara entered a text order reassigning this case to the undersigned, a District Judge in the Court's Rochester Division, on January 21, 2014. (Dkt. 107).  I held a status conference on February 12, 2014 (Dkt. 109), at which I scheduled the approximately three-week trial in this matter to commence in Rochester on April 21, 2014. (Dkt. 110).  Plaintiff filed the instant motion on March 3, 2014. (Dkt. 113).

## DISCUSSION

**I.     Judge Arcara's Transfer Order Is <u>Not</u> Void *Ab Initio*.**

Plaintiff argues that the *sua sponte* transfer of this case from the Buffalo Division

to the Rochester Division should be evaluated under the transfer of venue standard set

forth in 28 U.S.C. § 1404(a).   According to Plaintiff, a *sua sponte* transfer could only

occur after a formal hearing.   Plaintiff's position is contrary to the law and this District's

local rules.

The Buffalo Division and the Rochester Division are not statutory divisions.

*Compare* 28 U.S.C. § 112(d) (not establishing divisions within the Western District of

New York) *with, e.g.,* 28 U.S.C § 84(c) (establishing three divisions in the Central

District of California) *and* 28 U.S.C. § 124 (establishing seven divisions in each of the

Northern, Southern, Eastern, and Western Districts of Texas); *see also People v.*

*Operation Rescue Nat'l*, 69 F. Supp. 2d 408, 416 n.4 (W.D.N.Y. 1999) (noting that "the

court in Rochester is not a separate statutory 'division' of [the Western District of New

York]").   Rather, the so-called divisions of this District were created by local rule simply

as a matter of administrative convenience.

As a result, the District's local rules are determinative of the court's ability to

transfer cases from one division to another.   *See Jordon v. Bowman Apple Prods. Co.,*

728 F. Supp. 409, 419 (W.D. Va. 1990) ("Where divisional venue is mandated by local

rule . . . those mandates must be complied with.   However, where local rules are silent . . .

there is no longer any requirement in federal civil cases that venue be laid in a particular

division within a district."); *see also Bishop v. C & P Trucking Co.,* 840 F. Supp. 118,

119 (N.D. Ala. 1993) (moving trial from one division to another in Northern District of Alabama and holding that "the trial of a case may be held at any courthouse within the district even without the consent of the parties").

The applicable local rule of this District, Local Rule of Civil Procedure 5.1, provides as follows:

> Upon filing, civil cases are assigned to a Judge in either the Court's Buffalo Division (typically, cases arising in Allegany, Cattaraugus, Chautauqua, Erie, Genesee, Niagara, Orleans and Wyoming counties), or its Rochester Division (typically, cases arising in Chemung, Livingston, Monroe, Ontario, Schuyler, Seneca, Steuben, Wayne and Yates counties). **The Court may transfer cases from one division to another, *sua sponte*.** Parties requesting transfer of a case from Buffalo to Rochester, or vice versa, shall file a written motion requesting such relief, returnable before the Judge to whom the case is originally assigned.

L. R. Civ. P. 5.1(c) (emphasis added). In other words, Local Rule 5.1 allows for the *sua sponte* transfer of cases between Buffalo and Rochester. There is no requirement in Local Rule 5.1 that the Court provide notice and conduct a hearing before ordering a *sua sponte* transfer. Similarly, Local Rule 5.1 does not require consideration of any of the factors set forth in 28 U.S.C. § 1404(a) before ordering a *sua sponte* transfer.

Nonetheless, even though not required by Local Rule 5.1, the parties in this case were informed of the planned transfer and given the opportunity to be heard. Plaintiff's counsel acknowledged in her letter brief dated October 18, 2013, that Judge Arcara had invited "comment and discussion regarding the proposed transfer" at the conference held on September 13, 2013. (Dkt. 106). Plaintiff also submitted two letter briefs containing both legal and factual arguments. (Dkt. 104 & 106). In fact, the arguments Plaintiff makes in support of her current motion are nearly identical to those raised before Judge

- 4 -

Arcara in the letter briefs.  Additionally, more than four months passed between Judge Arcara informing the parties that he intended to transfer this matter to the Rochester Division and entry of the transfer order.  If Plaintiff felt that an additional hearing on the issue was required, she could have requested one at any time during that interval.  There is no evidence that Plaintiff requested a hearing.

Plaintiff cites two cases, *Swindell-Dressler Corp. v. Dumbauld*, 308 F.2d 267 (3d Cir. 1962) and *Barnet v. Elan Corp. PLC.*, 236 F.R.D. 158 (S.D.N.Y. 2005), for the proposition that a court must allow the parties to be heard before *sua sponte* ordering a transfer.  These cases are not applicable because they involved transfers of venue between two districts, not a transfer between divisions within the same district as expressly authorized by a local rule.

Moreover, neither *Swindell* nor *Barnet* requires a formal hearing prior to a *sua sponte* transfer.  The Third Circuit itself has explained that *Swindell* does not mean "that a hearing is necessarily required on every transfer motion. . . ."  *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756 (3d Cir. 1973).  Similarly, *Barnet* states only that "[b]efore *sua sponte* transferring a case . . . the transferring court should . . . allow the parties to present their views."  236 F.R.D. at 164.  That standard plainly was met in this case.

Local rules regarding divisional venue are fully enforceable.  *See Moysi v. Trustcorp, Inc.*, 725 F. Supp. 336, 339 (N.D. Ohio 1989) ("The repeal of [a statute requiring that action brought in district containing more than one division must be brought in division where defendant resides] was not intended to act as a prohibition against districts distributing their business by a divisional venue process, but as a removal

- 5 -

of that requirement in order to afford districts greater flexibility and **freedom to implement any process which would be effective in the distribution of their business**." (emphasis added)).  As such, and pursuant to Local Rule 5.1, Judge Arcara was free to order a *sua sponte* transfer to the Rochester Division.

Based on the foregoing, Plaintiff's request that the Court deem the transfer order void *ab initio* is denied.

## II.    Plaintiff Fails to Establish that Retransfer to the Buffalo Division is Proper.

In the alternative, Plaintiff asks the Court to retransfer this action back to the Buffalo Division pursuant to 28 U.S.C. § 1404(a).  "The determination whether to grant a motion to transfer under § 1404 is within the broad discretion of the district court" and the court must perform "an 'individualized, case-by-case consideration of convenience and fairness.'"  *Nat'l Fuel Gas Co. v. U.S. Energy Sav. Corp.*, No. 07-CV-440, 2008 WL 2405725, at *3 (W.D.N.Y. June 11, 2008) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).  There are eight factors the court should consider in determining whether transfer is proper under 28 U.S.C. § 1404(a):

> (1) convenience of the parties; (2) convenience of the witnesses;
> (3) availability of process to compel the presence of unwilling witnesses;
> (4) access to sources of proof; (5) where the events at issue took place;
> (6) where the case can be more expeditiously and inexpensively tried;
> (7) remoteness of the forum from the situs of the event; and (8) the forum
> court's need to rely on foreign law.

*Id.*  "The plaintiff's choice of forum should also be considered on a motion to transfer venue, and the plaintiff's choice of forum will be respected when the requested transfer would merely shift the inconvenience from one party to another."  *Id.*

Plaintiff argues that this action should be transferred back to the Buffalo Division. Motions to retransfer are highly disfavored under the doctrine of law of the case. *Gary Friedrich Enters., LLC v. Marvel Enters., Inc.*, No. 08 Civ 01533, 2008 WL 4129640, at *2-3 (S.D.N.Y. Sept. 4, 2008). "Indeed, the policies supporting the doctrine [of law of the case] apply with even greater force to transfer decisions than to decisions of substantive law; transferee courts that feel entirely free to revisit transfer decisions of a coordinate court threaten to send litigants into a vicious circle of litigation." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988). As such, a "transferee court should not re-transfer except under the most impelling and unusual circumstances or if the transfer order is manifestly erroneous." *Gary Friedrich Enters., LLC*, 2008 WL 4129640, at *3 (quotations omitted).

Because Judge Arcara already decided to transfer this case to the Rochester Division, this Court will not revisit the issue of transfer unless it finds that impelling and unusual circumstances for retransfer exist or that the transfer order was manifestly erroneous. *See id.* at *3; *see also Dresser Indus., Inc. v. First Travel Corp.*, No. CIV-88-581, 1990 WL 159037, at *4 (W.D.N.Y. Oct. 11, 1990) (denying retransfer motion because the transfer order was not "manifestly erroneous" and the case was not of "the most impelling and unusual circumstances"). The fact that the transfer order was entered without written explanation does not change this analysis, "for the law of the case turns on whether a court previously 'decide[d] upon a rule of law' . . . not on whether, or how well, it explained the decision." *Christianson*, 486 U.S. at 817 (quotation marks and alteration in original).

- 7 -

"Impelling and unusual circumstances arise when 'unanticipatable post-transfer events frustrate the original purpose for transfer.'" *Caribbean Wholesales and Serv. Corp. v. US JVC Corp.*, No. 93 Civ. 8197, 1996 WL 140251, at *4 (quoting *In re Cragar Indus., Inc.*, 706 F.2d 503, 505 (5th Cir. 1983)). Here, Plaintiff has not identified any post-transfer events that would frustrate the original purpose of the transfer. The original purpose of the transfer was to expedite the trial of this action. Trial is now scheduled to commence in less than one month. As a result, the purpose of the transfer has been achieved.

Plaintiff also cannot establish that the transfer order was manifestly erroneous. Even assuming *arguendo* that the Court was required to consider the factors relevant to a 28 U.S.C. § 1404(a) motion in the first instance, the transfer order was appropriate under the circumstances.

With regard to Plaintiff's choice of forum, although Plaintiff claims to have commenced this action in the Buffalo Division, it is the Court in the first instance that assigns a matter to either a judge in the Buffalo Division or a judge in the Rochester Division, typically as a simple matter of geography. *See* L. R. Civ. P. 5.1(c). As such, though Plaintiff may have filed her action at the Buffalo courthouse, Plaintiff cannot be said to have "chosen" the Buffalo Division in any meaningful way. The Court therefore considers this a neutral factor.

The Court has considered the other relevant factors and finds Plaintiff's arguments unavailing. Although Plaintiff argues that the parties and lay witnesses will be greatly inconvenienced by having to travel the approximately 60 miles from Buffalo to

Rochester,[1] "courts have repeatedly held that traveling such a distance is not the type of 'inconvenience' that supports a motion to transfer under § 1404(a)." *Operation Rescue Nat'l*, 69 F. Supp. 2d at 417 (declining to transfer venue from the Buffalo Division to the Rochester Division). Plaintiffs in the Western District of New York are routinely required to travel much greater distances in order to have their cases heard. For example, a plaintiff residing in Corning, New York, is required to travel either approximately 100 miles to the Rochester courthouse or approximately 125 miles to the Buffalo courthouse. Moreover, at least some of the potential jurors in this case are likely to have to travel more than 60 miles to attend trial. Defendant has disclaimed any inconvenience to itself and its witnesses in trying this action in Rochester (Dkt. 123 at 4-5), and at least eight of Plaintiff's witnesses are current or former JetBlue employees. (*See* Dkt. 93).

The location of the events at issue and the remoteness of the forum from the situs of the events are non-determinative for similar reasons. The Buffalo-Niagara International Airport is approximately 60 miles from Rochester. This is a minimal distance and Plaintiff has not presented any argument that the location of the airport will somehow impact the trial of this matter. In other words, there has been no claim that a visit to the airport will be necessary as part of this case.

The Rochester Division and the Buffalo Division have equal access to sources of proof and to process to compel the presence of unwilling witnesses. Also, the Court will not need to rely on foreign law. As such, none of those factors favor retransfer.

---

[1] The Court notes that the difference for Plaintiff is less than 40 miles, as she states in her moving papers that she lives 27 miles from the Buffalo courthouse and 66 miles from the Rochester courthouse. (Dkt. 113-1 at ¶ 21).

Furthermore, consideration of where the case can be more expeditiously and inexpensively tried weighs heavily in favor of trial in the Rochester Division. This case is now in its eleventh year. If it had been retained in or was returned to the Buffalo Division, it likely would not be tried for a significant period of time. By contrast, trial is scheduled to commence in the Rochester Division in less than one month. Both the specific parties in this case and the public as a whole have a strong interest in having litigation resolved as expeditiously as possible. This interest far outweighs the minor travel costs and inconvenience associated with traveling from Buffalo to Rochester.

Plaintiff suggests that I should travel to Buffalo to conduct the three-week trial in this case. Plaintiff's suggestion would create logistical problems in the other cases on my docket, thereby delaying other parties' opportunities to have their day in court. In other words, if I were to travel to Buffalo for the trial, it would undermine my ability to handle other criminal and civil cases on my docket during the estimated three weeks it will take to try the case. As the court noted in *Johnson v. Lewis*, 645 F. Supp. 2d 578 (N.D. Miss. 2009), it would be impossible for "judges to efficiently manage their dockets if required to maintain a near-constant state of preparation to travel to various trials on their [calendar]." *Id.* at 582. The minimal inconvenience to Plaintiff of trying this case in Rochester does not justify creating docketing delays in other cases.

Finally, Plaintiff's argument that the facilities at the Rochester courthouse are inadequate for the trial stretches the bounds of reasonable advocacy. Plaintiff complains that the courtroom that will be used to try this matter is not specifically designated for only my use, and she also contends that it is small and will be cramped for space. It is a

- 10 -

reality in the Rochester courthouse that there are more judges than there are courtrooms. Yet, civil and criminal trials are successfully held in the courtrooms in the Rochester courthouse nearly every day.  In fact, judges in this courthouse have been holding civil trials for almost two decades in the courtroom that will be used for this trial.  Plaintiff's suggestion that the interests of justice are somehow ill-served by such trials is wholly unwarranted.

The Buffalo courthouse, which is less than three years old and cost approximately $142 million to build, is undoubtedly one of the finest in the country.  *See* Phil Fairbanks, *Federal courthouse named for Jackson at official ceremony*, Buffalo News, Sept. 13, 2013,  http://www.buffalonews.com/city-region/federal-court/federal-courthouse-named-for-jackson-at-official-ceremony-20130930.  This does not mean that every federal litigant is entitled to have their matter heard in a brand new, multi-million dollar facility; if that were the case, the Court would be obligated to hold all trials in Buffalo.  Plaintiff's preference for the newer courtrooms in Buffalo is simply insufficient to demonstrate that the transfer order was manifestly erroneous or that the interests of justice would be served by a retransfer.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to transfer this case back to the Buffalo Division is denied.   The trial of this action will proceed in Rochester as previously scheduled.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated:  April 7, 2014
        Rochester, New York